KUNZLER v. JONES THOMAS RANCH CO. et al.

No. 4898. Decided July 19, 1930. (290 P. 173.)

*S. T. Lowe,* of Burley, Idaho, and *Wm. E. Davis,* of Brigham City, for appellants.

*Thatcher & Young,* of Ogden, for respondent.

STRAUP, J.

This case involves the right and title to the use of what is called winter waters of Dove creek in Box Elder county, Utah. There is no controversy as to the use of the waters between April 15 and September 15 of each year, the period referred to as the irrigation season. The dispute arises as to the use of the waters during the period between September 15 and April 15 of each year, the plaintiff contending that he during that period is entitled to the use of all the waters of the creek, the defendants that the respective rights of the parties during that period are the same as during the period between April 15 and September 15 on the basis of five-thirteenths of the stream to the plaintiff and eight-thirteenths to the defendants. The case was tried to the court, who on findings rendered a judgment in favor of the plaintiff, awarding to him all the waters of the stream between September 15 and April 15 of each year, when there was sufficient water in the stream to flow to his premises which are below the premises of the defendants, except the court granted the defendants during such period sufficient waters for culinary purposes and for live stock. The defendants appeal.

They challenge the findings, claiming that they in material particulars are not supported by the evidence, and that the conclusions and judgment are against law. As we consider the record, the controlling question is largely one of fact. The presented questions of law principally are dependent upon the evidence. The findings are full and ■ complete, and in detail reflect the facts as viewed and found by the trial court. Though this is a case in equity, with the whole of the proceedings certified to us, and in effect presenting a trial de novo on the record, yet, if on a review thereof we, considering as we do the better position of the trial court to judge the credibility of the witnesses and the weight to be given their testimony, should be of the opinion that the findings on all of the material issues are

supported by a fair preponderance of the evidence, the judgment should be affirmed, unless the conclusions drawn therefrom are wrong or are not supported by the findings.

At an early day, between 1870 and 1880, the predecessors of the parties appropriated all of the waters of the creek. The findings show a history somewhat in detail as to the lands acquired by the predecessors of the parties and the use made by them of the waters in controversy. Among other things, the court found that Dove creek is a natural channel of water, having its source in the mountains, and flowing in an easterly direction through the lands of the defendants, and then easterly or southeasterly about two or three miles to the lands of the plaintiff. His lands consist largely of meadow lands in sections 21, 22, and 27 in Tp. 12 N., Rg. 14 W., in Box Elder county. On such lands the plaintiff and his predecessors pastured a large number of cattle and grew wild hay and alfalfa for feeding purposes. In about 1870 the plaintiff's predecessors in interest, by means of dams, ditches, and laterals at the westerly boundary of the lands now owned and occupied by the plaintiff, diverted all of the waters from the creek and used them on such lands for irrigation and for stock and domestic purposes during the entire year, and so continuously used all of such waters until about 1880; and that such appropriation was the first and prior appropriation of all of the waters of the creek. In about 1880 James Rosevere, who then owned a part of the westerly portion of the lands now owned by the plaintiff, took up a homestead in section 18, consisting of about 160 acres about 3 miles up-stream and westerly of the lands now owned and occupied by the plaintiff. In 1884 Rosevere sold all his right, title, and interest in the lands now owned and occupied by the plaintiff to J. H. Clark, one of the plaintiff's predecessors. Joseph J. Rodgers took up a homestead also in section 18 of about 80 acres about the same time Rosevere took up his homestead. Both claimed rights in and to the use of waters of Dove creek, and used some of the waters on

their homesteads for irrigation and for domestic purposes. Soon a controversy arose between Clark, who became the sole owner of all of the lands now owned and occupied by the plaintiff, and Rodgers and Rosevere, whose homesteads were situated up stream about 3 miles from Clark's lands, as to the use of the waters of the creek. To compromise and determine their respective rights, a written contract in July, 1885, was entered into between Clark, Rosevere, and Rodgers, who then had or claimed the sole and exclusive right to the use of all of the waters of the creek. By the terms of the contract it was agreed that from and after April 15 of each year Rodgers was to use all of the waters of the stream for three days, and then turn the waters back into the creek, then Clark was to use all of the waters for five days, then Rosevere for five days, and so on consecutively until September 15 of each year, "and after the 15th day of September it (the water) is to go down the creek bed to J. H. Clark's Ranch and James Rosevere's ranch." The agreement is subscribed by Clark, Rosevere, and Rodgers before a notary public, and was recorded in the office of the county recorder of Box Elder county, and thereafter was turned over to Rosevere for safe-keeping, who framed it and hung it on the wall in the dining room of his ranch house, where it remained for many years and until a few years before the commencement of this action in April, 1928, when it disappeared.

In 1913 the plaintiff by mesne conveyances became the owner of all of the lands owned and acquired by Clark. The defendant Jones Thomas Ranch Company, by mesne conveyances, became the owner of the homesteads of Rosevere and Rodgers. In October, 1926, the ranch company by contract conveyed to the defendant Ward all its right, title, and interest in the homesteads; and at the commencement of this action, and at the time of the trial, Ward had become the equitable owner and possessor of all of the properties owned by Rosevere and Rodgers. Thus the plaintiff deraigns title

through Clark and his predecessors, and Ward through the Jones Thomas Ranch Company and its predecessors. The ranch company acquired title in about 1922 through E. H. Jones, who acquired title in about 1903.

It is the claim of Ward: (1) That, under the agreement of 1885, he through his predecessors acquired a right to the use of the waters of the creek not only between April 15 and September 15 of each year but also during the period from September 15 to April 15; (2) that, if the agreement is not susceptible of such a construction, the agreement is not binding on him, for the stated reason that it is a personal agreement, and binding only as to the parties thereto, and is not a covenant running with the land; (3) that by his grant from the Jones Thomas Ranch Company he expressly was granted "8/13 of the flow of Dove Creek," which he contends was the right acquired by his grantor and its predecessors, and thus Ward laid claim to the use of eight-thirteenths of all of the waters of Dove creek during the whole of the year, and undertook to so use such portion or quantity of the waters during the whole year. That led to this lawsuit.

The court not only found that the purpose of entering into the agreement of 1885 was to compromise, settle, and determine the respective rights of the parties to the agreement, and fix and determine the time, duration, and use of the water to which each party was entitled, but also found that, when the agreement was entered into, the lands then owned by Rosevere and Rodgers were devoted only to the raising of grain and a small amount of alfalfa and a small amount of garden products, and did not require water prior to April 15, or during the winter period, and that the lands of Clark, located about 3 miles down stream, were meadow lands, which by irrigation produced large crops of hay, and for such purpose and to water a large amount of live stock the waters during the period between September 15 and April 15 were beneficial and necessary, and that the parties by the agreement intended that Clark

should have the entire flow of the stream during such period. The court further found that the parties to the contract and their successors in interest until a few years before the commencement of this action so understood the agreement, kept and performed all of the terms and conditions thereof, and used and distributed the waters as provided by the agreement, giving to Clark and his successors, including the plaintiff, the whole of the stream during the period between September 15 and April 15 of each year, except when the waters were wrongfully and surreptitiously used by some of the predecessors of the defendants. In that connection the court further found:

"That from the year 1885 when said contract was made, until a few years prior to the bringing of this action, during which time said contract hung on the wall in the dining room of the James Rosevere ranch house, the owners of the various ranches had no trouble with respect to their various water rights, but that it there-after became apparent that the so-called winter water rights in Dove Creek could be used advantageously on the upper ranches for the irrigation of alfalfa prior to April 15th of each and every year, and that thereupon said agreement disappeared, and that the immediate predecessors of the defendants began for the first time to assert a right to the use of the winter waters of Dove Creek, but in this connection the Court finds that the defendants are not the owners of any of the waters of Dove Creek between September 15th and the succeeding April 15th, which is hereby designated as the winter water right, save and except that the defendants may divert from the natural channel of said Dove Creek sufficient waters for culinary purposes and for the watering of their sheep, providing that the same is returned to said channel after it has been used by the defendants for the purpose aforesaid."

The court further found that the respective rights of the parties in and to the use of the waters of the creek were not only as established by the agreement of 1885, but also as the predecessors of the plaintiff and of the defendants since 1885 and, until a few years before the commencement of this action, used and applied the waters of Dove creek in rotation as specified in the contract, giving to Clark and his

successors, including the plaintiff, the whole of the so-called winter waters.

It is urged by the defendants that the findings in such particular are either not supported by, or are against the great weight of the evidence. That the agreement of 1885 was entered into and recorded is not disputed. The court found, and there is ample evidence to show, that Ward, when he purchased and acquired his interest, had actual knowledge of the agreement. Nor is there any substantial dispute that the waters of the creek were used by the parties to the agreement and by their successors as found by the court, the summer waters in rotation, and the whole of the winter waters by the plaintiff and his predecessors, until some time after Jones acquired title. There is a direct conflict in the evidence as to the use he and the Jones Thomas Ranch Company made of the winter waters. Testimony was given on their behalf that some of the winter waters were used by them for domestic purposes and for irrigation prior to April 15. But the court found that whatever use was made by them was wrongful and surreptitious, and, when notified by the plaintiff to desist making such use, the water was turned back into the channel for plaintiff's use; and that his use of the winter waters was not otherwise interrupted or interfered with, until after Ward acquired title and asserted a right to the use of eight-thirteenths of the stream during the whole year.

On a review of the evidence we are satisfied that the findings as made by the trial court are supported by a fair preponderance of the evidence. In such view the question presented urged as to whether the agreement of 1885 was personal and binding only on the parties thereto and as to whether it is or is not a covenant running with the land is of no controlling importance. As already observed, the agreement as found by the court and as shown by the evidence was entered into to compromise, settle, and define the respective rights of the parties thereto, and to fix and de-

termine their respective use of the water; and since 1885, and until a few years prior to the commencement of this action, the predecessors of the parties used the waters as stipulated by the agreement. Such usage thus fixed and determined the rights of the predecessors of both the plaintiff and the defendants, regardless of the agreement; and thus the defendants acquired no greater rights in and to the use of the waters of the creek than were possessed or acquired by their predecessors.

There is another point urged. The court found, and the evidence shows, that since 1885 the predecessors of the defendants, after using the summer waters on their lands for the allotted period, turned the waters back into the natural channel of the creek at a point near the western boundary of their lands, and where a large diverting box was constructed to divert waters from the creek on their lands; that for some years prior to the defendants acquiring title there was constructed at a point about two miles westerly and up stream of the diversion point of the predecessors of the defendants what is called a savings ditch connected with the creek and running easterly and parallel with the natural channel of the creek to the lands now owned by the defendants, by means of which ditch the waters when low were diverted from the natural channel and carried to the defendants' lands and used for irrigation for the allotted period, and then turned back into the natural channel at the established and regular diversion point by means of a ditch connecting the savings ditch with the natural channel and coursed down to the plaintiff's lands; but, after Ward acquired title, and after the commencement of this action, he, instead of turning the waters from the savings ditch back into the natural channel at the established diversion point, turned them back into the channel at the upper end of the savings ditch and where the waters were taken into that ditch, thus, requiring the waters so turned over to the plaintiff to course and soak the channel for about two miles, re-

sulting in a great loss of water to him. Such matters were brought into the case by a supplemental complaint. The facts with respect thereto are not disputed. The court required the defendant Ward to turn the water back into the natural channel at the established diversion point, and where all of the predecessors of Ward had theretofore turned the water into the natural channel, for the use of the plaintiff. Complaint is made of that. It is urged that the savings ditch was constructed by the predecessors of the defendants, and hence the plaintiff had no interest in the ditch. The evidence is rather uncertain as to just when and by whom the savings ditch was constructed. No direct finding is made on the subject. We, however, do not regard that of controlling importance. The court did not award the plaintiff any right, title, or interest in the savings ditch. What the court did was to require the defendant Ward to turn the water back into the natural channel at the old and established diversion point of all of the predecessors of Ward. There is no apparent reason why it is more convenient or beneficial to Ward to turn the water back at the intake of the savings ditch than at the established diversion point; and it is apparent that it is an injury and a great loss to the plaintiff if the water is turned back to him at the upper end of the savings ditch and not at the regular and established diversion point. We think the judgment in such particular is proper.

The findings and evidence show that, depending upon climatic conditions, the flow of the creek varies, and that there have been periods when there was not sufficient water in the creek to flow to plaintiff's premises. On such occasions the court by its decree permitted the defendants to take and use all of the waters of the creek until there was a sufficient increase of the flow to permit the waters to go down to plaintiff's premises. The court also decreed that the defendants during the winter period were permitted to divert sufficient waters of the creek for culinary purposes

and to water live stock. We think the court awarded the defendants all they were entitled to, and that they have no just cause to complain.

The judgment is therefore affirmed, with costs to the plaintiff.

CHERRY, C. J., and ELIAS HANSEN, EPHRAIM HANSON, and FOLLAND, J.J., concur.